UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WINSTON SHILLINGFORD,

                Petitioner,

      v.

UNITED STATES,

                Respondent.

**MEMORANDUM AND ORDER**
14-CV-6284 (LDH)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

Petitioner Winston Shillingford petitions for a writ of error *coram nobis*, seeking relief on the grounds that (1) he entered a plea of guilty on facts that did not constitute a crime, and (2) his counsel was ineffective by allowing Petitioner to enter an impermissible plea. (Petition ("Pet."), ECF No. 1, at 1.)

## BACKGROUND

A federal investigation of Petitioner began in 2004 and early 2005. (Aug. 20, 2007 Gov't. Ltr., at 2, Pet'r Criminal Case No. 06-CR-716 ("Crim.") ECF No. 19.) Petitioner initially sought to obstruct the investigation by paying a government witness to leave the jurisdiction and pressuring a second government witness to lie to investigators. (Aug. 2, 2007 Gov't. Letter, at 3–4, Crim. ECF No. 15; Aug. 28, 2007 Sent'g Hrg. Minute Entry ("Sent'g Hrg"), Crim. ECF No. 23.) Eventually, Petitioner sought to cooperate with authorities and appeared for a proffer in June 2005. (Pet'r Objs. to Presentence Inv. Rep., at 2, Crim. ECF No. 17.) That same month, Petitioner sought to cure the multiple years of undeclared income by filing a return for tax year 2003, which included all undeclared income from tax years 2000, 2001, and 2002. (Pet. at 11.)

Petitioner claims he took this course of action—rather than file amended returns for the prior tax years—on the verbal advice of an unnamed IRS employee who spoke to Petitioner's wife. (*Id.*) Petitioner subsequently filed amended returns for his 2000, 2001, and 2002 tax years on October 30, 2006. (Pet'r Ltr. to the IRS, Pet. Ex. D, Crim. ECF No. 1.)

Nonetheless, on December 1, 2006, the Government filed a one-count Information against Petitioner, to which he pleaded guilty. (Gov't Mem. in Opp'n to Pet. at 3, ECF No. 6.) According to the Information, Petitioner earned commissions from several Connecticut companies but redirected those payments to a third party in the form of checks who, in turn, deposited the checks and provided Petitioner with an amount of cash equal to the value of each check. (Information ¶¶ 2–5, Crim. ECF No. 2.) The third party retained $1,000 per transaction. (*Id.* ¶¶ 4–5.) The Information further alleged that Petitioner filed income tax returns for tax years 2000, 2001, and 2002, and in each of which failed to disclose the commissions as income. (*Id.* ¶ 6.) The Information specifically alleged that Petitioner took these actions "[i]n order to conceal his receipt of these [payments] from the Internal Revenue Service." (*Id.* ¶ 3.)

At his plea hearing, Petitioner entered a plea of guilty to the charge that he "knowingly and willfully sought to evade his federal income tax by filing a false calendar year 2001 individual income tax return with the IRS in Holtsville, New York, in which he underreported his income, yielding a lower tax due and owing than he should [have] paid." (Dec. 1, 2006 Plea Hr'g Tr. 13:6–10 ("Plea Hr'g Tr."), Crim. ECF No. 47.) When the Court asked if Petitioner "underst[oo]d that that is the charge to which you're pleading guilty," Petitioner responded, "Yes, Your Honor." (*Id.* at 13:14–16.)

Later in the hearing, the Court instructed Petitioner to "tell me what it is that you did that resulted in this charge." (*Id.* at 15:23-24.) Petitioner responded,

> On or about April 15, 2002, I filed a United States individual income tax return which was false in my taxable income. And tax due for the calendar year of 2001 was substantially greater than reported on my tax return. I did this knowingly and with fully [sic]—I filed the return by mailing it into Suffolk County in New York.

(*Id.* at 15:25–16:5.) The Court then asked Petitioner, "[a]nd the part of the information about concealment of the income that is included in the information, and the income from the Connecticut companies, do you admit those factual allegations?" (*Id.* at 16:6–9.) Petitioner responded, "Yes, Your Honor." (*Id.* at 16:12.)[1]

Ultimately, Petitioner was sentenced to 21 months' incarceration followed by three years of supervised release, as well as a $5,000 fine. (Sent'g Hrg.) On February 19, 2008, the Second Circuit dismissed Petitioner's subsequent appeal from this conviction, finding that the appeal waiver contained in Petitioner's plea agreement barred the proceeding. (March 26, 2008 Second Circuit Mandate, Crim. ECF No. 31.)

After his release from prison and while subject to supervised release, Petitioner committed and was convicted in Connecticut federal court of one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and one count of conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). (Crim. J., *United States v. Shillingford*, No. 11-CR-201, Pet. Ex. J. at 1–2.) As a consequence of these convictions, on April 16, 2014, Petitioner pleaded guilty to violating the terms of his supervised release. (Violation of Supervised Release ("VOSR") Minutes, Crim. ECF No. 44.) The Court sentenced Petitioner to four months' incarceration on the violation to run consecutive to the term of imprisonment imposed for his convictions in Connecticut federal court. (VOSR J. at 1–2, ECF No. 45.)

---

[1] The instant petition characterizes Petitioner's actions differently. According to the petition, Petitioner did not intend to unlawfully evade or defeat the tax he owed on these commissions: rather, he sought to hide the income from his wife so that he could divert the funds for the care of his out-of-wedlock child. (Pet. at 9 n.3.)

3

## DISCUSSION

A writ of *coram nobis* is a challenge to the court's final judgment alleging a fundamental error "render[ing] the proceeding itself irregular and invalid." *See Pickett v. United States*, No. 18-CV-02560 (LDH), 2018 WL 9990828, at *2 (E.D.N.Y. Nov. 1, 2018) (internal quotation marks and citations omitted). Such a challenge is typically sought where a habeas petition under 28 U.S.C. § 2255 is unavailable because the petitioner is no longer in custody. *Id.* "In federal courts the authority to grant a writ of *coram nobis* is conferred by the All Writs Act, which permits 'courts established by Act of Congress' to issue 'all writs necessary or appropriate in aid of their respective jurisdictions.'" *United States v. Denedo*, 556 U.S. 904, 911 (2009) (quoting 28 U.S.C. § 1651(a)). "A writ of error *coram nobis* is an extraordinary remedy" which "should be granted 'only under circumstances compelling such action to achieve justice.'" *Chhabra v. United States*, 720 F.3d 395, 410 (2d Cir. 2013) (quoting *United States v. Morgan*, 346 U.S. 502, 511 (1954)). "The burden [on a petitioner] is a heavy one because a court reviewing a petition for *coram nobis* relief 'must presume that the [challenged] proceedings were correct, and the burden of showing otherwise rests on the petitioner.'" *United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018) (quoting *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000). "The writ thus serves as 'a remedy of last resort.'" *Id.* (quoting *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998)).

"To receive *coram nobis* relief, a petitioner must show 'that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" *Doe v. United States*, 915 F.3d 905, 910 (2d Cir. 2019) (quoting *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014)). As to the second

4

showing, "[n]o statute of limitations governs the filing of a *coram nobis* petition." *Kovacs*, 744 F.3d at 54. "The critical inquiry . . . is whether the petitioner is able to show justifiable reasons for the delay." *Id.* (quoting *Foont v. United States.*, 93 F.3d 76, 80 (2d Cir. 1996)). A petitioner makes the requisite timeliness showing by demonstrating diligence in the petitioner's quest to overturn his or her conviction. *See Kovacs*, 744 F.3d at 54 (finding a petition timely where Petitioner "diligently pursued" alternative ways to reenter the country and contacted the Government soon after becoming aware of the write of *coram nobis*.) However, a petition is "untimely" if "the petitioner knew at the time of his conviction of the facts underlying his subsequent claim that he did not appreciate the legal insufficiency of his guilty plea," but waited to file his petition until "years after the guilty plea at issue." *Pickett*, 2018 WL 9990828, at *2. Such is the case here.

      Petitioner pleaded guilty on December 1, 2006. (Pet. at 4.) His subsequent appeal was denied on February 19, 2009. (March 26, 2008 Second Circuit Mandate.) The instant petition was not filed until October 14, 2014. (Pet. at 23.) Put differently, Petitioner waited over five years to seek relief for his allegedly wrongful conviction. Petitioner argues that no time-bar should apply because he learned of the existence of a writ of error *coram nobis* only in September 2014, the month before he filed his petition. (Pet. at 16–17.) But Petitioner must show more than that he was unaware of the existence of the *coram nobis* writ; he must show that he diligently pursued relief from his conviction. He has not made such a showing. The petition is therefore untimely and must be denied.

## CONCLUSION

      The petition for a writ of error *coram nobis* is DENIED.

|  |  |
|---|---|
|  | SO ORDERED. |
| Dated: Brooklyn, New York<br>September 1, 2023 | /s/ LDH<br>LaSHANN DeARCY HALL<br>United States District Judge |